```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
```
--------------------------------

MICHAEL BUCHANAN,

                Plaintiff

     -v-                                 3:18-CV-223

BRIDGESTONE AMERICAS, INC.;
BRIDGESTONE RETAIL OPERATIONS, LLC;
and FIRESTONE COMPLETE AUTO CARE,

                Defendants.

--------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF RONALD R. BENJAMIN<br>Attorneys for Plaintiff<br>P.O. Box 607<br>126 Riverside Drive<br>Binghamton, New York 13902 | RONALD R. BENJAMIN, ESQ. |
| BARCLAY DAMON LLP-SYRACUSE<br>Attorneys for Defendants<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, New York 13202 | MATTHEW J. LARKIN, ESQ.<br>JULIE M. CAHILL, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I.    INTRODUCTION

On December 21, 2017, plaintiff Michael Buchanan ("Buchanan" or "plaintiff") filed a short and simple complaint in state court against defendants Bridgestone Americas, Inc., Bridgestone Retail Operations, LLC, and Firestone Complete Auto Care (the last individually "Firestone" and together "defendants"). The only claim was that defendants negligently maintained Firestone's premises, resulting in plaintiff slipping and crushing his foot under a

pallet jack loaded with a literal ton of rock salt.  On February 21, 2018, defendants removed that complaint to this Court.

Towards the conclusion of discovery, Buchanan moved to disqualify Dr. Angela DiDomenico ("Dr. DiDomenico"), defendants' expert witness slated to testify as to the likely cause of plaintiff's injury.  Defendants reprised with a motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56 against plaintiff's complaint, as well as a motion to disqualify plaintiff's expert witnesses, Dr. Michael H. Tirgan and Mr. David A. Clow, CPA.[1]  Those motions having been fully briefed, they will now be decided on the basis of the parties' submissions without oral argument.

## II.  BACKGROUND

Beginning in February of 2016, Buchanan worked as a delivery driver.  Dkt. 64-2, Defendants' Statement of Material Facts ("DSMF"), ¶ 54.[2]  In that role, plaintiff was tasked with delivering two pallets of rock salt, each weighing approximately 2,000 pounds, to Firestone on December 29, 2016.  *Id.* at 56.  Firestone, as its full name implies, is an auto mechanic shop in the business of performing general vehicle repairs.  Dkt. 64-5 ("Creller Dec."), p. 7.[3]  This particular Firestone has eight bays for servicing vehicles, seven of which are used for repairs.  *Id.*  The eighth, however, is not used except as overflow space.  DSMF ¶ 58.

David Creller ("Creller") was working at Firestone as a mechanic the day Buchanan was set to deliver the rock salt, and had been since 7:00 a.m.  DSMF ¶ 58.  When asked at deposition whether any work had been done in the eighth bay on December 29, 2016, Creller

---

[1] Plaintiff has also provided the affidavits of expert electrical engineer Matthew Papkov to rebut Dr. DiDomenico's theories of causation.  Dkts. 57-10 ("Papkov Aff.").  Defendants have not challenged the inclusion of his expert testimony.
[2] The facts are taken from defendants' statement of material facts where admitted by plaintiff, or from other record evidence.  Disputed facts are identified as such and supported by citations to the proponent's statement of material facts or to record evidence.
[3] Pagination corresponds with CM/ECF.

2

said "[a]bsolutely, no." Creller Dec. 19. When asked what the floor looked like that day, he replied that, because the eighth bay is so rarely used, the floor never has dirt or oil spots, as indicated by photographs in the record taken by Dr. DiDomenico on December 14, 2018. *Id.* at 18; Dkt. 69-15, pp. 2-6. Plaintiff, however, contends that those same photographs show several oil spots with dirt. Dkt. 69-15, pp. 2-6.

In either case, Buchanan arrived at Firestone at approximately 1:00 p.m. DSMF ¶ 56. As might be expected on a December afternoon in Central New York, it was sleeting when plaintiff arrived. Dkt. 64-4 ("Plaintiff Dep."), p. 84. Creller, the only Firestone employee present, directed plaintiff to unload the rock salt at the eighth bay. DSMF ¶¶ 56-57. Understandably wary of unloading such a substantial weight on uncertain terrain, plaintiff took some time to observe the condition of the garage bay. *Id.* ¶ 62. Plaintiff described the lighting as "average" for his inspection. *Id.* ¶ 65. He found no faulty concrete, and visually observed no other abnormalities about the conditions of the floor including any debris or greasy spots. *Id.* ¶ 62.

Having seen no cause for alarm, Buchanan made no mention of any hazard to a Firestone employee and began to unload the first pallet of rock salt. DSMF ¶¶ 66-67. In doing so, he used a pallet jack, a wheeled cart with a jack designed to lift and carry laden pallets. *Id.* ¶ 67, *see* Creller Dep. 14 (describing pallet jack).

At this point, the parties' narratives predictably diverge. To hear Buchanan tell it, he successfully removed the rock salt from the truck, and took another "three or four" steps. Plaintiff Dep. 85. In his final step, however, plaintiff's foot met a "sandy or gritty" surface, which caused him to slip. *Id.* He describes the sensation as if he were stepping on "Speedy Dry",[4] *id.*, which functions much like litter in a cat's litterbox, and is used to dry spilled liquids,

---

[4] Plaintiff also argues that Speedy Dry is plainly visible on the photographs taken of the floor of the garage bay. Dkt. 69-15, pp. 2-6.

3

Creller Dep. 19.  Plaintiff testified at his deposition that some employee of defendants had put Speedy Dry down to dry an oil spill.  Plaintiff Dep. 71.

Despite the slipping sensation, Buchanan maintained his grip on the pallet jack with both hands.  Plaintiff Dep. 87.  Plaintiff tried to pull the load to his left, but it continued straight as he lost traction.  *Id.* at 88.  Creller saw plaintiff's loss of control and started to react, but plaintiff shouted for him to stay back.  *Id.* at 89.  As plaintiff struggled to guide the pallet, he failed to notice the arm of the lift used to raise cars in the garage bay.  *Id.* at 90.  The lift arm stopped plaintiff's right foot, but the pallet continued on, crushing his foot.  *Id.*

Defendants, of course, dispute much of Buchanan's narrative, though they do not dispute that his foot was crushed between the pallet and the lift arm.  Creller's deposition testimony first provides that at no point in his twenty-four years as a Firestone employee had he ever seen Speedy Dry or a similar granulated substance used on a spill.  Creller Dep. 18-19, 22.  Instead, he avowed that Firestone uses absorbent mats or an absorbent "snake" to manage spills.  *Id.* at 22.

Similarly, Creller's manager also claims that in his 21 years of employment at Firestone he has never seen granular absorbents such as Speedy Dry employed to clean up oil spills.  DSMF ¶ 73.  Indeed, Firestone's explicit policy is that "[g]ranular absorbent should not be kept in the store" because of its potential to damage equipment.  DSMF ¶ 71.  Regardless of how defendants manage oil spills, Creller is not aware of any other slip and fall accidents that occurred at Firestone before Buchanan's injury.  Creller Dep. 25.

Defendants also tell a different tale as to the series of events resulting in Buchanan's injury.  Creller claims he offered to help plaintiff unload the pallet, but he refused the offer.  Creller Dep. 11-12.  Eventually, Creller noticed that plaintiff was struggling to get the pallet jack under the salt pallet, which sat obstinately unmoved by his efforts.  *Id.* at 12-13.  Creller

started to walk toward plaintiff, and as he did so plaintiff managed to get the jack into the slats of the pallet and begin to lift it.  *Id.* at 13-14.

At this point, Creller repeated his offer of help, but Buchanan began to take the pallet off the truck himself.  Creller Dep. 14-15.  As plaintiff turned the handle of the pallet jack to guide the rock salt off the truck ramp, Creller contends that "everything just came down with him; the jack, the pallet, and himself, came off of the back of the truck."  *Id.* at 17.  According to Creller, then, it was the sudden slide off the back of the truck that caused his foot to be crushed against the lift arm.  *Id.* at 19.

As might be guessed, after the pallet crushed Buchanan's foot, he was not in much of a condition to drive his truck.  *See* DSMF ¶ 74.  Instead, plaintiff's employer sent another of its employees, Kerry Barlow ("Barlow"), to retrieve the truck from Firestone.  *Id.* ¶ 20, 74.  According to Barlow's deposition testimony, when he retrieved the truck, he noted that its bed was at an angle that he considered unsafe, which he said was approximately the same as a photograph taken by defendants' expert.[5]  Dkt. 64-10 ("Barlow Dep."), pp. 20-21; *see* Dkt. 62-5, p. 11 (containing photograph of approximate angle Barlow found truck).  Creller similarly affirmed, but did not testify at his deposition, that the truck's bed was at an angle.  Dkt. 64-25 ("Creller Aff."), ¶ 6.

Buchanan disputes, in part through his expert Matthew Papkov, that he, or anyone else with basic common sense, would have tried to unload a pallet weighing a ton from a truck bed at the steep angle defendants argue.  Dkt. 69, Plaintiff's Statement of Material Facts ("PSMF"), ¶ 76; Papkov Aff. ¶¶ 9-10.  He also argues that if the angle were as severe

---

[5] Dr. DiDomenico used the photograph to recreate a similar angle using the bed of another truck and determined that angle to be 12.5 degrees.  Dkt. 57-11, ¶¶ 3,5.  Plaintiff disputes the accuracy of this measurement because Barlow was not present at the measurement and only testified as to the approximate angle of the truck bed, rendering this measurement inaccurate.  Dkt. 57-11, ¶¶ 3-7.  This Memorandum-Decision and Order does not rely on this measurement's accuracy.

as defendants posit, the pallet would likely have caused a substantially more severe injury than the one plaintiff suffered.  PSMF ¶ 76, Papkov Aff. ¶¶ 9-10.

In any event, in recognition of Buchanan's injury, his supervisor offered him a position in sales so he would not need to operate vehicles in the future.  DSMF ¶ 83.  Additionally, plaintiff was offered any other necessary accommodations that would allow him to return to work.  *Id.* ¶ 84.  Plaintiff never responded to his supervisor's offer, and never returned to his job.  *Id.* ¶ 85.

On December 21, 2017, Buchanan filed the present complaint against defendants in state court.  Dkt. 2.  On February 21, 2018, defendants removed that complaint to this Court.  Dkt. 1  The case proceeded through discovery, at which point defendants argue that plaintiff may have failed to provide them with full expert disclosures, although defendants are uncertain as to that point.  DSMF ¶¶ 27-53.  However, for his part plaintiff insists that his disclosure has been complete.  PSMF ¶¶ 51-53.  On March 7, 2019, plaintiff moved to disqualify Dr. DiDomenico.  Dkt. 57.  On July 1, 2019, defendants moved to disqualify plaintiff's experts and for summary judgment under Rule 56.  Dkt. 64.

### III. DISCUSSION

#### A. Legal Standard for Summary Judgment.

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id.* at 273.

The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Instead, a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). In short, summary judgment is the point in litigation where the record evidence is assembled to assess whether there exist any material disputed facts that necessitate trial, and thus the point at which the parties must "put up or shut up." *Weinstock v. Colum. Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### B. **Defendants' Motion for Summary Judgment.**

Buchanan has asserted only one cause of action: negligence under New York common law.[6] There are only three elements of negligence under New York law: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) [the] plaintiff suffered damage as a proximate result of that breach." *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).

Because Buchanan's case is of the subspecies of "slip and fall" negligence cases, in addition to the standard elements of negligence, he must also prove "either that defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it

---

[6] Although neither party disputes that New York's substantive common law is at issue, it is worth noting that the Court is bound to apply the choice-of-law rules of its forum state in answering questions brought under diversity jurisdiction. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law, if a tort is designed to regulate conduct, then the law of the state in which the tort took place typically applies. *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013). Because plaintiff brings a claim for negligence for an injury that took place in New York, that state's law will apply.

7

caused the condition to be created by its own affirmative act." *Riley v. Battery Place Car Park*, 210 F. App'x 76, 77 (2d Cir. 2006) (summary order) (citing *Mercer v. City of New York*, 637 N.Y.S.2d 456, 458 (2d Dep't 1996)).

Defendants claim that Buchanan's showing of proof thus far is fatally lacking in three ways: (1) he has failed to produce evidence establishing the hazardous condition at play that caused his accident; (2) he has failed to provide evidence that defendants created or received either actual or constructive notice of any hazardous condition that might have existed; and (3) he has failed to establish proximate cause because defendants' experts are prepared to testify that the accident could not have occurred as plaintiff argues.

Defendants' first and third arguments can be disposed of easily enough. For their first point, defendants essentially argue that Buchanan's testimony that he slipped on Speedy Dry used to cover an oil spill is insufficient to establish a hazardous condition that caused his accident. In particular, defendants argue that plaintiff could not have slipped on Speedy Dry because that substance is prohibited at Firestone. DSMF ¶ 71, *see* Creller Dep. 18-19, 22.

But as Buchanan correctly notes, his own sworn deposition testimony states that he felt a gritty substance under his feet and that oil was present when he slipped. Plaintiff Dep. 71, 85. Plaintiff's narrative is thus much more specific than in *Duncan v. Toles*, the case defendants rely on for summary judgment, in which the plaintiff's deposition testimony was only that she did not know what caused her to fall, but her affidavit in opposition to summary judgment suddenly provided that the floor was slippery. 801 N.Y.S.2d 359, 360 (Sup. Ct. App. Div. 2d Dep't 2005). Accordingly, defendants' citation is inapposite, and plaintiff's narrative sufficiently identifies the hazard that caused his injury.

Defendants' remaining arguments on this score essentially amount to a contention that Buchanan's testimony is overpowered by defendants' own record evidence. That is a fine

8

trial argument, but has no place at the summary judgment stage, where the only question is whether liability can be established or dispelled as a matter of law. A reasonable jury could credit that plaintiff felt a gritty substance under his feet when he slipped despite defendants' evidence to the contrary. Accordingly, defendants' first argued basis for summary judgment is inadequate.

Defendants' third argued basis, that Buchanan has failed to establish proximate cause, is similarly flawed. Defendants beat the same drum that their showing, specifically the report of their expert Dr. DiDomenico, overmasters plaintiff's argument that Speedy Dry on an oil spill proximately caused his accident. Once again, defendants cannot prevail on summary judgment simply by arguing that their evidence is stronger than plaintiff's. The relative weight of evidence is the factfinder's decision and cannot be resolved as a matter of law unless the disparity is such that no reasonable jury could find for plaintiff. Thus, defendants' third argument for summary judgment is similarly unavailing.

However, Defendants' second argument, that Buchanan has failed to provide evidence of defendants' causation or notice of the hazardous condition that injured him, tells a different tale.

Buchanan's opposition to this argument is threefold. First, Buchanan argues that under New York law it is defendants' burden upon moving for summary judgment—and not his—to prove prima facie that they did not create or have actual or constructive notice of the hazard that caused him to slip. *Totten v. Cumberland Farms, Inc.*, 871 N.Y.S.2d 179, 180 (Sup. Ct. App. Div. 2d Dep't 2008). Plaintiff is correct that New York law passes this burden on to defendants, but that a rule exists in state law does not mean that this Court is bound to follow it.

9

Needless to say, Congress and the federal courts cannot constitutionally create their own rules of substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But procedural rules governing how cases in federal courts are to be litigated have always been in the federal wheelhouse. *Id.* at 92 (Reed J., concurring).

Beginning, it seems, with *Tingling v. Great Atl. & Pac. Tea Co.*, several courts in this Circuit have held that New York's burden allocation on summary judgment in slip and fall cases is procedural in nature, and thus Rule 56's typical burden framework—that a defendant may prevail on summary judgment by pointing to a plaintiff's failure to create a "genuine dispute[ ] as to any material fact" and is therefore entitled to judgment as a matter of law—overrides New York's common law to the contrary. 2003 WL 22973452, at *2-3 (S.D.N.Y. Dec. 17, 2003) (citing Rule 56); *see, e.g.*, *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 400-01 (E.D.N.Y. 2010) (adopting *Tingling*'s ruling and furnishing additional arguments for doing so).

In particular, this line of cases has noted that under existing Supreme Court precedent, an on-point federal rule will typically override a contrary state law as long as the rule truly regulates procedure. *Doona*, 680 F. Supp. 2d at 401 (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010). Accordingly, the only question that need be asked is whether Rule 56's allocation of burdens truly regulates procedure. If Rule 56's burden scheme governs "the manner and the means" by which rights are enforced without fundamentally altering "the rules of decision" by which those rights are adjudicated, then the allocation of burdens at the summary judgment stage is procedural. *Shady Grove*, 559 U.S. 407.

To that end, it bears noting that New York's rule exclusively governs what may be considered in a summary judgment motion; it does not alter the elements of a negligence

10

claim. *See Totten*, 871 N.Y.S.2d at 180 (noting that defendant cannot prevail on slip-and-fall summary judgment motion only by pointing at gaps in plaintiff's evidentiary record).

Thus, allowing a claim to survive summary judgment despite an absence of affirmative proof would only alter how that plaintiff's rights are enforced and would not ultimately alter the rules of decision for plaintiff's claim. After all, it would be a futile exercise to assess the record, find that plaintiff has no evidence of causation or notice, and thus that there is no genuine dispute of material fact as to an essential element of his claims, but nevertheless usher him through summary judgment knowing that he cannot present an issue of fact at that stage on an element he must prove. In other words, sooner or later he must prove causation or notice to vindicate his rights not to be negligently subjected to slipping hazards, regardless of which standard applies. *See Totten*, 871 N.Y.S.2d at 180 (acknowledging by implication that lack of evidence of causation or notice is gap in plaintiff's proof).

Thus, choosing between Rule 56 and New York's burden allocation considers not what plaintiff must prove, but rather when he must prove it. That decision is plainly a procedural one, and Rule 56 governs. *Shady Grove*, 559 U.S. 407. By extension, if plaintiff has failed to marshal evidence to create an issue of fact for causation or actual or constructive notice, his claim must be dismissed.

Buchanan's second argument is that he has adequately established causation because the oil spill and Speedy Dry must have been created by defendants because of Firestone's exclusive control over the garage bay. Although he does not use the term, what he describes is the principle of *res ipsa loquitur*. That doctrine allows a jury to infer the defendant's negligence if negligence is a frequent cause of the event that injured the plaintiff and there is a dearth of other available evidence to illuminate the cause of the injury. Restatement (Third) of Torts: Phys. & Emot. Harm § 17 cmt. a (Am. Law. Inst. 2020).

11

To justify a theory of *res ipsa loquitur* under New York law, a plaintiff must demonstrate that the events surrounding his injury were: (1) of a kind that typically does not occur without someone's negligence; (2) caused by an agency or instrumentality within the exclusive control of the defendant; and (3) not owed to any voluntary action or contribution on the part of the plaintiff. *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 272 (2d Cir. 1996). The "fall of an elevator or the explosion of boilers provides a stronger case for finding negligence [relying on *res ipsa loquitur*] than does the fact that a man falls down stairs[.]" *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 424 (2d Cir. 2004) (Calabresi, J., concurring) (cleaned up).

Even drawing every inference the evidence permits in Buchanan's favor, he has failed to prove that *res ipsa loquitur*, if submitted to a jury, could salvage his claim. First, that a man should slip and injure himself while unloading a pallet weighing in excess of a ton—a task which required him to maneuver a pallet jack backwards off a truck on a sleety day—is by no means an event that would commonly be explained through negligence. Plaintiff Dep. 84; DSMF ¶ 67.

After all, there are any number of other, non-negligent explanations for this outcome, including that Buchanan simply didn't see the lift arm as he was backing the pallet off the truck and backed into it only for the pallet to follow, or that he slipped on sleet, or even just that he placed his foot wrong and stumbled. In particular, it is also possible that defendants' theory of the case—that plaintiff unloaded the salt pallet at an unsafe angle—is true. Of course, plaintiff rebuts this point, but only by challenging the accuracy of defendants' measurements and by arguing the angle defendants posit would have likely caused greater injuries than the ones plaintiff suffered. Papkov Aff. ¶¶ 9-10. Nowhere does he dispute Barlow's testimony as a disinterested witness that he observed the bed at an unsafe angle

12

when he arrived. PSMF ¶¶ 76-77 (admitting Barlow testified the truck bed was at angle, but denying only that angle was 12.5 degrees as defendants argue).

But even assuming Buchanan did dispute the angle of the truck bed, it is enough that the additional possible explanation in the absence of defendants' negligence undercuts the applicability of *res ipsa loquitur*. *Santa Maria*, 81 F.3d at 272. That doctrine exists to protect plaintiffs who are denied access to evidence because of a defendant's control of the premises and ability to deny the plaintiff access to information. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 17 cmt. a (Am. Law. Inst. 2020). It does not exist as a safety net to bolster a plaintiff's theory of causation in the absence of any strong suggestion arising naturally from the facts that his defendants were negligent.

But giving Buchanan the further benefit of the doubt and assuming he did slip on a gritty substance, even that does not raise any presumption of negligence. Plaintiff never actually saw Speedy Dry or oil on the floor on the day of his accident—despite taking time to inspect the eighth bay before unloading the pallet—and so the feeling of a gritty, oily substance under his booted foot in the middle of winter is not enough to merit the leap that defendants negligently caused that gritty substance to be present. DSMF ¶¶ 62, 65.

Although the Second Circuit has found summary judgment to be improperly granted on a *res ipsa loquitur* case featuring a pool of an oily substance on the floor of a room secured by a keypad, that case is not this one. *Coale v. Metro-N. Commuter R. Co.*, 621 F. App'x 13, 15 (2d Cir. 2015) (summary order). After all, the defendant in *Coale* offered no alternative explanation for why oil would be in the middle of the floor of a locked room, but these defendants have disputed that there was oil and Speedy Dry at all. *Compare id.*, *with* Creller Dep. 18-19, 22. Moreover, they have advanced an alternate theory of plaintiff's accident that does not entail negligence on their part, specifically that plaintiff unloaded the pallet from the

13

truck at an unsafe angle. Creller Aff. ¶ 6; Barlow Dep. 20-21. Again, plaintiff may dispute this argument, but its mere existence is enough to weaken his case that defendants' negligence is the likely explanation for his injury. *Santa Maria*, 81 F.3d at 272.

Furthermore, defendants have offered a great deal of evidence that Buchanan could not have slipped on Speedy Dry, because Firestone policy prohibits the use of Speedy Dry and no one had used the eighth bay on the day of plaintiff's delivery. *Compare Coale*, 621 F. App'x at 15, *with* DSMF ¶¶ 71, 73; Creller Dep. 18-19, 22.

In other words, Buchanan essentially asks the Court to allow his claim to survive based entirely on his testimony that he felt—but never saw—a gritty, oily substance under his foot. No matter how closely the Court follows plaintiff's narrative, it cannot come to the conclusion that a reasonable jury could determine from that one piece of evidence that negligence is the likely explanation for his injury, especially not given defendants' alternative narrative. Accordingly, plaintiff has failed to provide sufficient evidence that defendants created a hazardous condition that caused him injury.[7] *See, e.g., Young v. Port Auth. Trans-Hudson Corp.*, 2016 WL 7489099, at *3 (S.D.N.Y. Dec. 22, 2016) (holding that plaintiff did not merit *res ipsa loquitur* instruction where he claimed he tripped down stairs on bottlecap but saw no refuse on staircase).

Third and finally, Buchanan argues that he has adequately proven constructive notice of the dangerous condition because he has submitted evidence that defendants had actual notice of a recurring, dangerous condition.[8] "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to

---

[7] Even if defendants were saddled with the initial burden of demonstrating that they did not create the hazardous condition plaintiff complained of under New York law, defendants' affirmative evidence of the angle of plaintiff's truck and Firestone's policies about the use of Speedy Dry or other granular substances would have met that burden.

[8] Plaintiff does not argue that defendants had actual notice.

14

permit defendant's employees to discover and remedy it." *Riley*, 210 F. App'x at 77 (citing *Mercer v. City of New York*, 637 N.Y.S.2d 456, 458 (2d Dep't 1996)).

As a result, "a general awareness that litter or some other dangerous condition may be present . . . is [not] legally sufficient to charge defendant with constructive notice . . . ." *Gordon v. Am. Museum of Nat. History*, 492 N.E.2d 774, 775 (N.Y. 1986). By extension, it comes as little surprise that both New York's Court of Appeals and the Second Circuit have adamantly held that the defendant must have had notice of the "particular condition" at issue. *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (citing *Gordon*, 492 N.E.2d at 775).

However, "evidence that an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed" by the defendant can establish constructive notice. *Gonzalez v. Kmart Inc.*, 2016 WL 3198275, at *5 (E.D.N.Y. June 8, 2016). But this principle only comes into play in cases where the defendant had actual knowledge of a specific and recurrent dangerous condition. *See, e.g.*, *Weisenthal v. Pickman*, 545 N.Y.S.2d 369, 371-72 (App. Div. 2d Dep't 1989) (collecting cases for proposition that defendant could be charged with constructive notice of hazardous condition when it had actual awareness that stairway under its control would frequently become covered in garbage and did not clean that stairway with appropriate frequency).

The problem that Buchanan runs into is that there is no evidence of defendants' actual notice of a recurring problem with oil spills near the doorway to the eighth bay or of defendants' failure to appropriately address that recurring problem. Plaintiff's only evidence on either point are the photographs taken on December 18, 2018, and his testimony when shown those photographs at his deposition that on the day of his injury there was oil present similar to the oil he claims is reflected in those images. Plaintiff Dep. 71; Dkt. 69-15, pp. 2-6.

Even discounting all of defendants' evidence and testimony that the eighth bay was only seldom used, these two pieces of evidence are not enough to merit constructive notice. Defendants were not aware on this record of any other accidents that ever occurred in any garage bay, let alone the eighth bay, to give warning of a potential recurring danger. Creller Dep. 25. Plaintiff has also not provided any internal memoranda chastising workers for their lax cleaning habits, or anything else that would suggest a known, recurring problem with promptly cleaning oil spills in the eighth bay. Furthermore, the two instances in which plaintiff does argue oil was actually present in the eighth bay were two full years apart. Plaintiff Dep. 71; Dkt. 69-15, pp. 2-6.

Thus, assuming that Buchanan saw oil on the day of his accident and the visible dampness of the concrete in the photographs is also owed to oil, two points across so wide an expanse of time cannot be enough to provide defendants with actual notice of a recurring dangerous condition, especially not where the photographs show no damp concrete near the garage door where plaintiff slipped. *See, e.g.*, *Riley*, 210 F. App'x at 77 (finding no constructive notice as matter of law where plaintiff offered "no evidence that oil leakage was a recurring condition on the ramp where" that plaintiff slipped).

Moreover, even if Buchanan had demonstrated that oil was present and created a recurring problem, there is no evidence whatsoever that defendants or their employees had actual notice that oil was frequently on the floor of the eighth bay or that they failed to address the risks that oil posed. *See Gonzalez*, 2016 WL 3198275, at *5. If anything, plaintiff consistently argues that the oil spills were cleaned up and dried, and nowhere has he ever argued that defendants' efforts to do so were wanting. *See, e.g.*, Plaintiff Dep. 72 (plaintiff noting that defendants would have swept up Speedy Dry on oil spill he alleges caused his injury and noting that photographs in evidence showed where oil had been

16

"spilled previously but cleaned up").  It simply cannot be that defendants had actual notice of any recurring danger in the absence of other complaints or evidence that defendants did not appropriately clean oil spills which frequently plagued the doorway to the eighth bay.  Accordingly, plaintiff has failed to provide sufficient evidence that defendants had constructive notice of a specific, recurring hazardous condition which caused him injury.

As a result, Buchanan's showings for constructive notice and defendants' creation of the hazard he complains of cannot carry him past summary judgment.  Because of that failing, and the lack of any evidence or arguments that defendants had actual notice of the particular spill of oil coated in Speedy Dry that plaintiff claims caused his slip and subsequent injury, he has failed to identify a genuine dispute of material fact and defendants' motion for summary judgment must be granted.[9]

## IV. **CONCLUSION**

Ultimately, Buchanan sought trial based only on the sensation he described under his booted foot and a few pictures which are at best ambiguous.  This evidence is certainly enough to create a question of fact as to what specifically caused him to injure himself:  it presents a classic question of two competing narratives.  But that question of fact is irrelevant in the absence of plaintiff's failure to produce a similar question as to whether defendants should be held responsible causing his injury under either of those narratives.  In the absence of any evidence that defendants should have known about a hazardous condition or sufficient evidence to assume that they negligently caused one, plaintiff's claim must be dismissed.

Therefore, it is

ORDERED THAT

---

[9] Because plaintiff's complaint is dismissed without reliance on any expert testimony, the parties' cross-motions to disqualify their opponents' expert witnesses must be denied as moot.

1. Defendants Bridgestone Americas, Inc., Bridgestone Retail Operations, LLC, and Firestone Complete Auto Care's motion for summary judgment is GRANTED;

2. Plaintiff Michael Buchanan's complaint is DISMISSED WITH PREJUDICE; and

3. The parties' cross-motions for disqualification of expert witnesses are DENIED AS MOOT.

The Clerk of Court is directed to enter judgment accordingly and close the case file.

IT IS SO ORDERED.

Dated: August 24, 2020
       Utica, New York.

David N. Hurd
U.S. District Judge